UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AARON ABADI,

                    Plaintiff,

          -against-

THE UNITED STATES OF AMERICA; THE
UNITED STATES DEPARTMENT OF
JUSTICE; MERRICK BRIAN GARLAND;
THE FEDERAL BUREAU OF
INVESTIGATIONS; CHRISTOPHER ASHER
WRAY; RONALD ALAN KLAIN; JEFFREY
DUNSTON ZIENTS; ANTHONY JOHN
BLINKEN; DOCTOR JILL TRACY JACOBS
BIDEN; THE CENTRAL INTELLIGENCE
AGENCY,

                    Defendants.

23-CV-7413 (JGLC)

ORDER OF DISMISSAL

JESSICA G. L. CLARKE, United States District Judge:

          Plaintiff, who is appearing *pro se*, invokes the Court's federal question and diversity of

citizenship jurisdiction, alleging that Defendants violated his federal constitutional rights,

including his right to vote and his rights under the First Amendment. By order dated August 23,

2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without

prepayment of fees. Plaintiff also seeks a preliminary injunction. For the reasons set forth below,

the Court dismisses the complaint, but grants Plaintiff 60 days' leave to replead his claims

arising from federal government officials' alleged coercion of social media companies to limit

his freedom of speech on their platforms. For this reason, the Court also denies Plaintiff's request

for a preliminary injunction. *See* ECF No. 7.

## STANDARD OF REVIEW

          The Court must dismiss an IFP complaint, or any portion of the complaint, that is

frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary

relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (internal citations omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff brings this action against the following Defendants: (1) the United States of America; (2) The United States Department of Justice ("DOJ"); (3) Attorney General Merrick

Garland; (4) the Federal Bureau of Investigation ("FBI"); (5) FBI Director Christopher Wray; (6) former White House Chief of Staff Ronald Klain; (7) current White House Chief of Staff Jeffrey Zients; (8) Secretary of State Anthony Blinken; (9) First Lady Dr. Jill Biden; and (10) the Central Intelligence Agency ("CIA").

Most of Plaintiff's 42-page complaint consists of allegations that Defendants violated his rights by causing Donald Trump's failure to be elected president in 2020 and harming Trump's chances of being elected in 2024. Plaintiff alludes to a "campaign" conducted by the DOJ and FBI against Trump and in favor of Joe Biden during the 2020 election. ECF No. 1 ("Compl.") at 10. According to Plaintiff, Hunter Biden left a laptop at a computer repair shop, the contents of which "showed serious criminal activity from Hunter Biden, and very possibl[y] violations by Joe Biden himself." *Id.* The store owner gave the laptop to the FBI, but the "FBI and DOJ kept it quiet in order to protect the Bidens." *Id.* at 11. Fifty-one "former senior government employees" wrote a letter claiming that the "Hunter Biden laptop was Russian disinformation," but "some" of those "later admit[ted] before a Congressional Committee that they knew it was false." *Id.* Plaintiff asserts that the "letter was organized by and solicited by Anthony Blinken . . . and the CIA" to "make sure that Biden wins the election." *Id.*

Plaintiff references "significant reports of voter fraud, election fraud, and questionable activities by the people and the machines that were counting votes" in the 2020 elections, states that "many questions" were raised about the election at a Senate hearing and refers to an unspecified poll showing that "55% of Americans believe that cheating affected the outcome of the 2020 presidential election." *Id.* at 12.

Plaintiff attended the protest in Washington, D.C. on January 6, 2021. He alleges that there were "many undercover law enforcement officers and operators" in the crowd, and that

"[t]here was a deliberate attempt by the United States government to try to make it look like an insurrection, in order to shut down all protest, and scare everyone from speaking up." *Id.* at 13. Plaintiff, who did not enter the Capitol Building, states that he saw people encouraging and pushing other people into the building and Plaintiff is "confident that they were instructed to do that by our government." *Id.* at 14. He asserts that the government "continuously lies" about the people killed that day and that "[e]verything is twisted and spun to create this insurrection narrative, which is a sham and a very BIG LIE." *Id.* (capitalization in original).

The DOJ, FBI, and "others in the United States government" continue to "restrict our [F]irst [A]mendment right of free speech and right to protest" by "forc[ing] and/or pressur[ing] social media and other platforms to censor, shadow ban, and otherwise stamp out any mention of voter fraud, or similar." *Id.* at 14–15. Since 2018, federal officials, including Defendants, "have made public statements and demands" to social media companies in order to "induce them to censor disfavored speech and speakers." *Id.* at 28. Defendants have threatened the social media companies with reform of Section 230 of the Communications Decency Act to make it easier to impose liability on the companies for actions taken on their platforms. *Id.* The companies have also been threatened with greater scrutiny and enforcement of antitrust laws and increased regulation. *Id.* Plaintiff alleges that he was "completely banned and thrown off of Twitter" and "shadow banned on Facebook." *Id.* at 32. By being removed from social media, Plaintiff "was denied any opportunity to protest, and any opportunity for free speech." *Id.* Plaintiff alleges that Garland was "the top man, the coordinator and the main person responsible for these violations" and that Wray "was also in charge of most if not all of these actions." *Id.* at 33.

Plaintiff asserts that Defendants violated his First Amendment rights to freedom of speech and freedom to assemble and petition the government for redress by "suppress[ing]

conservative-leaning free speech," such as speech about the "Hunter Biden laptop story," the "lab-leak theory of COVID-19's origin"; speech about the "efficiency" of COVID-19 masks, lockdowns, and vaccines; the "security of voting my mail; and "negative posts" about Defendants, the economy, or President Biden. *Id.* at 28.

Now that Trump is again running for President in 2024 and "[h]is poll numbers look really good[,] [t]hose same government people and many more are waging war against him by weaponizing the justice system and charging him with crimes that they refused to charge others." *Id.* at 15–16. Plaintiff maintains that the FBI, DOJ, and others are therefore "denying Plaintiff's right to vote and choose his own leaders, and denying Plaintiff's freedom of speech and right to protest." *Id.* at 16.

Plaintiff alleges that "the DOJ was behind all four" criminal indictments brought against Trump and that "Merrick Garland and the DOJ were instructed to destroy Trump in any way they can, to ensure that Trump cannot run for president." *Id.* at 18. Defendants "took . . . away" Plaintiff's "right to vote" in 2020 and 2022, and "are trying to take that [right] away from him for 2024 and beyond." *Id.* at 19.

Plaintiff further asserts that "Joe Biden one thousand percent has dementia." *Id.* at 20. Plaintiff alleges, "The people around [Biden] are defrauding the American people into believing that Joe Biden is running the country, but in reality, the country is being run by unelected people behind him in the shadows, who are therefore taking away our right to vote." *Id.* at 21. Jill Biden is a "willing participant" in this scheme to defraud Plaintiff of his right to vote because "[s]he knows that he is not running the country and cannot run the country, but she doesn't tell anyone." *Id.* at 22. Secretary Blinken, Attorney General Garland, and Defendants Klain and Zients, are in "constant direct contact" with Biden and therefore, they are "participants in this

expansive fraud and its coverup." *Id.* at 23. Furthermore, "[t]he federal agencies are involved too, as it would be impossible to pull this off without their help." *Id.*

Plaintiff alleges that Defendants injured him by "suppressing the ability for free speech," "hiding stories that show faults with one of the candidates, and by making up stories to defame the other candidate," "put[ting] their foot on the scale and manipulat[ing] the election." *Id.* at 23–24. Moreover, "[h]aving the wrong government in office . . . allowed [Defendants] to create multiple overreaching executive orders and administrative mandates that caused Plaintiff to lose multiple business projects." *Id.* at 24. Plaintiff asserts he is "directly affect[ed]" because the "unelected" government is "spending trillions of dollars on things that the American people don't want" and engaging in "pay for play and corruption." *Id.* Plaintiff alleges he lost $1.5 billion in business opportunities because of "the actions and manipulations of these Defendants" and government spending creates debt, which is "a responsibility on every American including this Plaintiff." *Id.* at 25.

Defendants violated his right to petition for redress by "creat[ing] an extensive campaign to find anyone and everyone who participated" in the January 6 insurrection, the purpose of which Plaintiff believes was "to eradicate any dissent" and "take away their credibility." *Id.* at 30. The DOJ and FBI "created an extensive manhunt, followed by prosecutions, while lying about what actually happened and omitting and/or hiding evidence that showed their story was not honest." *Id.* at 32.

Plaintiff further asserts that Defendants violated his right to vote by "conspir[ing] to take various direct actions in order to manipulate the voting in order to ensure that Trump doesn't win." *Id.* at 35. Such "direct actions" include the "scandal" surrounding Hunter Biden's laptop, which Plaintiff maintains that "[i]f the media and the people were aware of it, there is a good

chance that Biden would have lost of the election." *Id.* at 36. Defendants also "hid the information about Biden's dementia" and had they not done so, "it is likely that Biden would have lost." *Id.*

Plaintiff seeks money damages as well as injunctive relief requiring Defendants to: (1) "cease and desist from trying to run the country without an elected president in charge"; (2) "STOP their interference in the voting process immediately"; (3) set up a "special counsel" to investigate the 2020 and 2022 elections; and (4) set up a "special counsel" to "investigate the impersonating of the president, and/or the using of the president in an incompetent state to further their own policies." *Id.* at 39–40.

On August 27, 2024, Plaintiff filed a motion for a preliminary injunction seeking the following relief:

a) Cease and desist order: Defendants should stop running the country without the President's direct involvement.

b) Delay prosecutions: Halt legal actions against Donald J. Trump until December to ensure fair campaigning opportunities.

c) Election Interference: Prevent federal agencies from participating in get-out-the-vote activities or other forms of election interference.

d) Truth Disclosure: Defendants must disclose whether President Biden is cognitively impaired.

e) Receivership: Place the U.S. Government and its nuclear codes into receivership, and arrange for an emergency election to be held.

f) Debt Suspension: Stop incurring new debt until an elected person runs the country.

g) Rhetoric Control: Enjoin defendants from dishonest rhetoric against Trump and his

supporters.

h) False Flag Prevention: Prevent defendants from creating false flag events to discredit

right-wing voters.

i) Reversal of Policies: Repeal all policies from the current administration since January

20, 2021.

j) Border Control: Close the border and remove all illegal immigrants who did not follow

the legal process to enter this country.

k) Stop Targeted Prosecutions: Cease prosecutions against opposition voters and elected

officials.

l) Allow Stephen K. Bannon, advisor and friend to President Trump, and a vocal

advocate of his MAGA movement, to get out of the Danbury prison until after the

election is tallied."

ECF No. 7 at 21-22.

## DISCUSSION

Plaintiff's claims can be divided into two categories: (1) claims that Defendants violated

his "right to vote" and his rights under the First Amendment by allegedly taking actions and

disseminating information that negatively impact the electability of Donald Trump while

suppressing or limiting information that would negatively impact the electability of Joe Biden;

and (2) claims arising from various government officials and government agencies allegedly

coercing social media companies to censor or limit Plaintiff's speech on their platforms. For the

reasons set forth below, the Court dismisses Plaintiff's first category of claims for lack of

standing; grants Plaintiff leave to replead his second category of claims – related to government

coercion of social media companies – in an amended complaint that alleges only those facts

giving rise to these claims and names all defendants allegedly involved in violating Plaintiff's rights; and dismisses Plaintiff's claims for money damages against the United States, the federal agencies, and federal officials in their official capacities as barred by sovereign immunity. Because Plaintiff has not stated any viable claims, much less any that are likely to succeed, the Court denies Plaintiff's requested preliminary injunctive relief.

## I.    Standing

Plaintiff brings First Amendment and right-to-vote claims based on his contention that various Defendants worked in concert to take actions and circulate information that he alleges paints former President Trump in a negative light, while failing to report or otherwise suppressing or covering up information that would make President Biden look bad. Plaintiff lacks standing to bring these claims and the Court therefore dismisses them for lack of subject matter jurisdiction.

In order to establish that the Court has subject matter of his claims, a plaintiff must demonstrate that he has standing to assert his claims, such that the matter presents a case or controversy within the meaning of Article III of the Constitution. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408–409 (2013). To establish Article III standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339. To allege a "concrete and particularized" injury, a plaintiff must show that he "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Valley Forge Christian Coll. v. Americans*

*United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 n.1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."). Accordingly, an injury that plaintiff "suffers in some indefinite way in common with people generally" will not suffice. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006); *see also Lujan*, 504 U.S. at 573–74 ("[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large— does not state an Article III case or controversy.").

Here, Plaintiff alleges that Defendants have violated his "right to vote" and his rights under the First Amendment when they damaged former President Trumps electability by disseminating information and taking actions critical of Trump and suppressing information that is critical of President Biden.[1] Plaintiff does not allege that he has suffered a "concrete and particularized" injury. *Spokeo*, 578 U.S. at 339. As Plaintiff states, the actions of Defendants "affect[] every American including this Plaintiff." Compl. at 23. Plaintiff's claims amount to a generalized grievance that is insufficient to give rise to Article III standing. *See, e.g.*, *Tafuto v. Donald J. Trump for President, Inc.*, 827 F. App'x 112, 114 (2d Cir. 2020) (claim that defendants "diluted" anti-Trump votes by spreading Russian-backed disinformation was not a cognizable injury-in-fact because they "assert an injury that was generalized and widely shared by millions of voters"); *Crist v. Comm'n on Presidential Debates*, 262 F.3d 193, 194 (2d Cir. 2001) ("[A] voter fails to present an injury-in-fact when the alleged harm is abstract and widely

---

[1] Plaintiff appears to equate his right to vote for a candidate with a purported right to have that candidate win. He puts forth no allegations suggesting that he was ever prevented from casting a ballot in an election, by Defendants or anyone else.

shared . . . .”); *Collins v. Merrill*, No. 16-CV-9375 (RJS), 2016 WL 7176651, at *2 (S.D.N.Y. Dec. 7, 2016) (finding that voter lacked standing to challenge certification of the Electoral College vote where her complaint was "premised entirely on alleged injuries that [p]laintiff shares with the general voting population").

In addition to failing to allege a cognizable injury-in-fact, Plaintiff also fails to allege causation between Defendants' alleged actions and any negative impact on Plaintiff's preferred candidate. *See, e.g.*, *Davis v. Garcia*, No. 07-CV-9897 (CLB), 2008 WL 2229811, at *5 (S.D.N.Y. May 27, 2008) (holding that "[t]he endless number of diverse factors potentially contributing to the outcome of elections forecloses any reliable conclusion that voter support of a candidate is fairly traceable to any particular event," and that the court "would have to accept a number of very speculative inferences and assumptions" to find causation between defendants' conduct and a candidate's election loss) (cleaned up); *see also Tafuto*, 827 F. App'x at 115 (citing with approval the *Davis* court's application of the causation).[2]

Because Plaintiff's claims are a generalized grievance and because he has failed to allege facts demonstrating that any injury was fairly traceable to Defendants' actions, Plaintiff fails to demonstrate that he has standing to bring these claims. The Court dismisses these claims for lack

---

[2] The Court notes that Plaintiff alleges that he has lost "multiple business projects" due to "multiple overreaching executive orders and administrative mandates" that were enacted because Defendants caused the "wrong government" to be elected. Compl. at 24. In other words, Plaintiff appears to allege that Defendants took actions that caused voters to vote for Biden rather than Trump, and once in office, Biden enacted unspecified policies that somehow caused Plaintiff to lose business opportunities. Plaintiff's theory of causation goes even further than the theory of causation rejected in *Davis*. Not only would the Court have to assume that Defendants' actions caused Trump's loss, it would have to go one step further and assume that Defendants also caused the policies implemented by the elected President. Plaintiff has not alleged any facts supporting such an attenuated chain of causation.

of Article III standing, and therefore for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

## II.      Claims Arising from Coercion of Social Media Companies

Plaintiff alleges that the DOJ, FBI, and "others in the United States government" have previously and are continuing to violate his First Amendment rights by pressuring social media companies to censor or limit certain types of speech. Even if the Court assumes that Plaintiff has standing to being these claims, the complaint as filed does not comply with Rule 8's requirement that it include a short and plain statement showing that Plaintiff is entitled to relief. *See* Fed. R Civ. P. 8(a). Plaintiff's allegations with respect to the claims for which he does not have standing are voluminous and often interwoven with his allegations related to his social media claims. Moreover, it is unclear which of the named defendants Plaintiff alleges were involved with the alleged coercion claims. He alleges that the DOJ, FBI, and "others in the United States government" have forced or pressured social media companies to limit speech. Compl. at 14–15. However, he never identifies the "others in the United States government" who were involved in violating his rights. It is also unclear from the complaint what specific relief Plaintiff is seeking with respect to these claims.

The Court grants Plaintiff leave to file an amended complaint in which he only repleads those claims arising from the alleged coercion of social media companies. The amended complaint must include a short and plain statement showing that Plaintiff is entitled to relief and name as Defendants those parties directly involved in violating his rights. The amended complaint must also describe the relief Plaintiff is seeking based on the standards set forth below.

## III.      Sovereign Immunity

Plaintiff asserts claims seeking money damages from the United States, DOJ, FBI, CIA, and Garland, Wray, Klain, Zients, Blinken, and Jill Biden in their official capacities. Plaintiff's

claims for damages against these defendants must be dismissed as barred by sovereign immunity.

*See United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citing *United States v. Sherwood*, 312

U.S. 584, 586 (1941)); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir.

1994) ("Because an action against a federal agency or federal officers in their official capacities

is essentially a suit against the United States, such suits are . . . barred under the doctrine of

sovereign immunity, unless such immunity is waived.").  Because any amendment would be

futile, the Court declines to grant Plaintiff leave to replead any claims for money damages

against these defendants.

### IV.    Claims for Money Damages Against Federal Officials

Plaintiff also appears to assert claims for money damages against federal officials in their

individual capacities. Because Plaintiff alleges that his constitutional rights were violated by

employees of the federal government, the Court liberally construes these claims as arising under

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See*

*Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("[*Bivens*] is the federal analog to suits brought

against state officials under [§ 1983].");  *Morales v. City of New York*, 752 F.3d 234, 237 (2d Cir.

2014) (holding that district court properly construed Section 1983 claims brought against federal

employee as arising under *Bivens*).

The United States Supreme Court has recognized implied causes of action under *Bivens*

in three contexts: (1) unreasonable search and seizure under the Fourth Amendment, *Bivens*, 403

U.S. 388 (1971); (2) employment discrimination under the Due Process Clause of the Fifth

Amendment, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) inadequate medical treatment of a

convicted prisoner under the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). After

deciding these three cases, the Supreme Court "made [it] clear that expanding the Bivens remedy

is now a 'disfavored' judicial activity," *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017), and that a

*Bivens* remedy is not available, "where there are 'special factors counselling hesitation in the absence of affirmative action by Congress,'" *Hernandez v. Mesa*, 582 U.S. 548, 553 (2017) (quoting *Carlson*, 446 U.S. at 18). Under *Ziglar*, unless a *Bivens* claim bears some resemblance to one of the three types of *Bivens* claims previously recognized by the Supreme Court, a court must hold that the claim constitutes a new *Bivens* context. *Ziglar*, 582 U.S. at 140. More recently, the Supreme Court held that even if a court finds that a case presents "parallel circumstances" with the three prior cases recognizing a *Bivens* remedy, a court may not find a *Bivens* remedy unless it also decides that there is no rational reason to think that Congress is better equipped to create such a remedy. *See Egbert v. Boule*, 596 U.S. 482, 495 (2022) (holding in the context of a Fourth Amendment claim under *Bivens* that "superficial similarities are not enough to support the judicial creation of a cause of action").

Because the Court is granting Plaintiff leave to replead certain First Amendment claims and it is unclear at this time whether Plaintiff will assert claims for money damages against federal officials with respect to those claims, the Court declines to decide the issue of whether Plaintiff has an implied cause of action under *Bivens* until after Plaintiff has filed an amended complaint.

### V.    Plaintiff's Motion for a Preliminary Injunction Is Denied

Plaintiff has also requested that the Court issue a preliminary injunction, seeking a range of relief that Plaintiff lacks standing or any viable basis to seek. In order to obtain a preliminary injunction, Plaintiff must demonstrate a likelihood of success on the merits, or at a minimum, serious questions going to the merits, of his claims. *See Conn. State Police Union v. Rovella,* 36 F.4th 54, 62 (2d Cir. 2022). Plaintiff has failed to do so, for the reasons stated above. Plaintiff has no viable claims related to the relief he seeks in this motion. For these reasons, Plaintiff's motion is denied.

## VI.    Leave to Replead

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid First Amendment claim arising from the government's alleged efforts to coerce or pressure social media companies to limit free speech, the Court grants Plaintiff 60 days' leave to file an amended complaint detailing his claims. Plaintiff's amended complaint must comply with Rule 8 of the Federal Rules of Civil Procedure and should name as defendants those federal officials or agencies that he alleges have violated his rights. The amended complaint must also describe the relief Plaintiff is seeking based on the standards set forth above. Plaintiff is granted leave to replead only those claims arising from coercion of social media companies. The Court will summarily dismiss any claims that have already been dismissed in this order if Plaintiff reasserts them in his amended complaint.

## CONCLUSION

The Court dismisses Plaintiff's First Amendment and right-to-vote claims arising from his allegations that Defendants took actions to make Donald Trump less electable for lack of Article III standing, and therefore for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

The Court dismisses Plaintiff's claims for money damages against the United States, DOJ, FBI, CIA, and Garland, Wray, Klain, Zients, Blinken, and Jill Biden in their official capacities under the doctrine of sovereign immunity.

The Court grants Plaintiff 60 days' leave to replead his First Amendment claims arising from the federal government's alleged coercion of social media companies to limit speech on their platforms. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 23-CV-7413 (JGLC). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the action will be dismissed for the reasons set forth in this order.

The Court also denies Plaintiff's motion for a preliminary injunction. ECF No. 7.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated:    September 9, 2024
          New York, New York

_____
JESSICA G. L. CLARKE
United States District Judge